# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TERENCE REA,**

    **Plaintiff,**

**v.**      Case No: 6:18-cv-655-Orl-31GJK

**ALEYSSA MARIE ARROYO MARRERO and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 15) filed by Defendant Aleyssa Marie Arroyo Marrero (henceforth, "Marrero"), the response in opposition (Doc. 28) filed by the Plaintiff, Terence Rea ("Rea"), the reply (Doc. 30) filed by Marrero, the supplemental response (Doc. 34) filed by Rea, and the reply (Doc. 35) to that supplemental response filed by Marrero.

### I. Background

This suit arises out of an automobile accident that occurred on August 22, 2015 involving vehicles driven by Rea and by Marrero, as well as a third vehicle driven by non-party Diann McMurtrie ("McMurtrie"). Rea contends that Marrero negligently rear-ended the vehicle driven by McMurtrie, causing it to strike the vehicle containing Rea and his minor son, Jack. At the time of the accident, non-party Foremost Insurance Group ("Foremost") insured Marrero. Her policy with Foremost had bodily injury liability limits of $10,000 per person and $20,000 per occurrence.

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") provided uninsured/underinsured motorist coverage to Rea.

On March 21, 2018, Rea filed this suit, asserting a negligence claim against Marrero (Count I) as well as breach of contract (Count II) and bad faith (Count III) claims against State Farm. On April 26, 2018, State Farm removed the suit to this court. By way of the instant motion, Marrero seeks summary judgment on the grounds that Rea settled his claim against her prior to filing suit.

## II.   Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**III. Analysis**

The following facts are undisputed:

● Nicholas Panagakis ("Panagakis"), the attorney representing the Plaintiff and his son, sent a demand letter dated February 5, 2016 (henceforth, the "February 5 Letter") to Pablo Andrade ("Andrade"), a claims adjuster for Foremost, offering to settle both claims in exchange for Marrero's policy limit of $20,000. (Doc. 15-1 at 1). In the February 5 Letter, Panagakis set several additional conditions on the settlement; for example, he demanded affidavits to verify that the Foremost policy was Marrero's only insurance coverage and that she was not acting in the course and scope of her employment when the accident occurred. (Doc. 15-1 at 3-4). The February 5 Letter also included a February 29, 2016 deadline for payment and for satisfaction of the other conditions. (Doc. 15-1 at 3-4).

● Andrade responded by letter dated February 15, 2016, stating that Foremost "agree[s] to tender our named insured's bodily injury policy limits of $20,000" but explained that Foremost had "three parties presenting bodily injury claims" – *i.e.*, the Reas plus McMurtrie – and would therefore "like to coordinate a global settlement conference within the next 10 days to resolve this claim." (Doc. 15-2 at 1). Andrade then requested that Panagakis phone him to schedule such a conference. (Doc. 15-2 at 1).

- Andrade sent Panagakis another letter, dated March 1, 2016, saying that he was following up on a recent conversation with Panagakis's paralegal regarding the claim of Terence Rea. (Doc. 15-3). In pertinent part, the March 1 letter stated:

> We settled you [sic] client's bodily injury claim at $5,750.00. Enclosed you will have the check for the full amount of the settlement and our proposed release for the claim.

(Doc. 15-3 at 1). The check and the proposed release were attached to the March 1 letter. (Doc. 15-3 at 2-4). However, it is undisputed that Rea did not cash the check or sign the release.

- Panagakis sent a letter to State Farm (the "State Farm Letter") dated March 4, 2016, informing the company of a "global settlement" involving the Reas and a third claimant and stating that "Terence Rea and Jack Rea each received $5,750 and the third claimant received $8,500." (Doc. 15-4 at 1). Panagakis requested that State Farm (1) approve his clients' policy-limit settlement with Foremost and (2) waive its subrogation rights. (Doc. 15-4 at 1). State Farm did so in a letter dated March 11, 2016. (Doc. 15-5).

Marrero contends that the foregoing establishes that, at the latest, Rea's claim against her was settled on March 11, 2016, when State Farm approved it. (Doc. 15 at 4). She contends that the February 5 Letter "constituted an offer to settle Mr. Rea's claim" and that Foremost's March 1 letter "constituted an acceptance of that offer." (Doc. 15 at 6). But it is well-settled under Florida law that, to result in a contract, the acceptance of an offer "must be absolute and unconditional, identical with the terms of the offer, and in the mode, and at the place, and within the time expressly or impliedly stated within the offer." *See, e.g.*, *Tovar v. Russell*, 238 So. 3d 835, 838 (Fla. 4th DCA 2018). In the February 5 Letter, Panagakis offered to settle the claims of both Rea and his son in exchange for $20,000 and other conditions such as the affidavits, with a February 29 deadline. (*See* Doc. 15-1). Foremost's March 1 letter provided that Rea (rather than Rea and his son) would receive $5,750 (rather than $20,000); it was not accompanied by the

- 4 -

affidavits or a promise to provide them; and it was dated the day after the deadline set forth in the February 5 Letter. (*See* Doc. 15-3). In other words, Foremost's purported acceptance was not "identical with the terms of" the offer contained in the February 5 Letter, and it appears not to have been made "within the time expressly or impliedly stated within" that letter. Therefore, based on these undisputed facts, it was not an acceptance of that offer. As this is the only offer relied upon by Marrero as the basis for the alleged settlement, her motion must be denied.

But that is not the end of the matter. Based on the record, it appears that Foremost believed Rea's claim had been settled. And the record in this case contains evidence that some sort of settlement occurred (though not one based on the offer contained in the February 5 Letter). For example, it does not appear from the record that Panagakis immediately disputed Andrade's March 1 announcement that Rea's claim had been settled for $5750, as one would expect if no settlement had occurred. Instead, three days later, Panagakis informed State Farm that a global settlement had occurred. (Doc. 15-4). On the other hand, it does not appear that Rea ever cashed the $5,750 check from Foremost, or several replacements that were issued after the previous checks expired. (Doc. 28-3, 28-4). And Marrero has not provided any of the documentation one would expect to see if a settlement had occurred – such as a signed settlement agreement – or even a description of how and when the settlement was reached, and who negotiated it.

Thus, genuine issues of material fact remain as to whether Rea's claim against Marrero was settled before this suit was filed. Normally, the factual issues underlying an affirmative defense such as this would be resolved at trial. But this is a diversity case, and it is undisputed that both Rea and Marrero are residents of Florida. If no settlement occurred, then the parties are not diverse, and the Court lacks subject matter jurisdiction over this dispute. Federal courts are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.

*Green v. Graham*, 906 F.3d 955, 961 (11th Cir. 2018). Accordingly, the Court must resolve the settlement issue before proceeding with this case. An evidentiary hearing on the matter will be set by separate notice.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 15) filed by Defendant Aleyssa Marie Arroyo Marrero is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 9, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE